IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| ALAN TODD BROWN, individually and on behalf of all others similarly situated, | * * * * | 4:12-cv-00102-SMR-TJS |
| Plaintiff, | * * | |
| v. | * * | ORDER ON DEFENDANT'S MOTION |
| LOUISIANA-PACIFIC CORP., | * * | TO DISMISS |
| Defendant. | * * | |

Before the Court is Defendant's Motion to Dismiss Plaintiff's Amended Complaint

("Motion"), pursuant to Federal Rule of Civil Procedure 12(b)(6), and attached memorandum in

support of its motion ("Defendant's Brief").  [Docket 18].  Plaintiff resisted the Motion

("Plaintiff's Resistance") [Docket 22] and Defendant replied ("Defendant's Reply") [Docket 29].

The matter is fully submitted.

## I.  OVERVIEW OF FACTUAL ALLEGATIONS

The present putative class action lawsuit was brought by Alan Todd Brown ("Plaintiff")

on behalf of himself and on behalf of all others similarly situated.  Plaintiff's Second Amended

Complaint[1] ("Amended Complaint") [Docket 31] asserts claims for negligence, fraudulent

misrepresentation, breach of warranty, and unfair or deceptive practices or acts against

Louisiana-Pacific Corporation ("Defendant") in connection with its design, manufacture,

---

[1]  On October 2, 2012, the Court directed Plaintiff to amend his First Amended
Complaint (Docket 13, filed May 17, 2012) to properly allege jurisdiction.  [Docket 31].  The
only changes in the Second Amended Complaint were to correct a jurisdictional pleading.  The
Court did not require the parties to resubmit motions or supporting documents and considered the
instant Motion to Dismiss fully briefed as of August 21, 2012.

marketing, advertising, warranty, and sale of an allegedly defective product ("TrimBoard"[2]).  *See*

Am. Compl. ¶¶ 1–5.  TrimBoard is a product manufactured, marketed, and warranted by

Defendant and its subsidiary, ABT Building Products Corporation ("ABTCO"), for use as fascia,

soffit, corner board, bandboards, and window and door trim.  *Id.*  ¶ 2.  Plaintiff alleges that

Defendant and ABTCO "designed, tested, manufactured, marketed, advertised, warranted and/or

sold" millions of linear feet of TrimBoard throughout Iowa and the United States.  *Id.*  ¶ 10.

Plaintiff, through his home builder and "based upon representations of the suitability and cost of

the product," purchased 1328 linear feet of TrimBoard for use in construction of his home.  *Id.* ¶

12.  In conjunction with its marketing and sale of TrimBoard, Defendant represented and

expressly warranted the following:

> a.   "TrimBoard is recommended for use where any high-quality, nonstructrual
> trim lumber is required."
> b.    "Use TrimBoard for all of your non-structural trim lumber needs."
> c.   "TrimBoard is intended for use as nonstructural trim, fascia, corner board,
> soffit, rake board, and bandboard lumber."
> d.   "Louisiana-Pacific Corporation (LP) warrants its TrimBoard, exclusive of
> finish, against delamination, checking, splitting, cracking, and chipping of the
> basic substrate for a period of ten years from the date of installation under normal
> conditions of use and exposure, providing the trim is properly stored, installed,
> maintained, and protected as specified in LP's Application Instructions."

*Id.* ¶ 16.

However, "[c]ontrary to LP's representations . . . TrimBoard delaminates, checks, splits,

cracks, and chips under normal conditions of exterior use and exposure."  Am. Compl. ¶ 19.

Plaintiff alleges that TrimBoard "is inherently defective for exterior use and fails to perform as

intended because it prematurely deteriorates, rots, swells, buckles, delaminates, absorbs water,

warps, and/or bulges under normal conditions and natural, outdoor exposure."  *Id.* ¶ 23.  The

---

[2]  For purposes of clarity and to avoid inadvertent reference to a generic "trimboard"
product, the Court will always refer to Defendant's product with its proper capitalization
("TrimBoard"), even when quoting Plaintiff's Amended Complaint or Plaintiff's Resistance.

product's degradation and moisture absorption results in "consequential water and structural damages" including "the growth of mold, mildew, fungi, and insect infestation." *Id.* Plaintiff alleges damage to both the installed TrimBoard and other components of his home. *Id.* ¶ 24.

Plaintiff first discovered the alleged damage in April 2010 and filed a warranty claim with Defendant soon thereafter. Am. Compl. ¶ 26. Defendant offered Plaintiff $197.67, which Plaintiff declined. *Id.* Plaintiff spent approximately $1700.00 to repair the damage to his home allegedly caused by TrimBoard's failure. *Id.* Plaintiff then filed the instant putative class action lawsuit in March 2012 and has since twice amended his complaint. Plaintiff's Second Amended Complaint asserts claims for negligence, fraudulent misrepresentation, breach of warranty, and unfair or deceptive practices or acts against Defendant, and requests declaratory relief and money damages. Defendant filed the instant Motion to Dismiss, pursuant to Rule 12(b)(6), for failure to state claims for negligence, fraudulent misrepresentation, unfair or deceptive practices, and declaratory judgment. *See* Def. Mot. at 1.

## II. MOTION TO DISMISS

In addressing a motion to dismiss under Rule 12(b)(6), this Court "is constrained by a stringent standard . . . A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove *no* set of facts in support of his claim which would entitle him to relief." *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 545–46 (8th Cir. 1997) (quoting *Fusco v. Xerox Corp.*, 676 F.2d 332, 334 (8th Cir. 1982) (internal citation omitted) (emphasis added)). In addition, the complaint must be liberally construed in the light most favorable to the plaintiff and should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations. *Parnes*, 122 F.3d at 546.

For a complaint to survive a 12(b)(6) motion to dismiss, the pleadings must comply with Federal Rule of Civil Procedure 8(a)(2) and the standards for pleadings promulgated by the United States Supreme Court.  Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. Rule Civ. Pro. 8(a)(2). The Supreme Court has read this standard to require that the complaint contain sufficient factual matter that, when accepted as true, states a claim of relief that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  When evaluating a motion to dismiss, the court must accept as true all factual allegations contained in the complaint.  *Id.* at 678.  However, legal conclusions are not presumed to be true.  *Id.*; *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459–60 (8th Cir. 2010) ("Courts must accept . . . specific factual allegations as true but are not required to accept . . . legal conclusions.") (citing *Twombly*, 550 U.S. at 570).  As a result, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S at 555).  Thus, to survive a motion to dismiss, the factual allegations, absent legal conclusions and mere recitals of elements, must state a plausible claim for relief.  *Id.* at 679.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

In line with these principles, the Supreme Court has constructed a two-pronged approach to determining whether a complaint gives rise to a plausible entitlement to relief.  *Id.* at 679. First, the reviewing court should begin by "identifying pleadings that, because they are no more

than conclusions, are not entitled to the assumption of truth." *Id.* After disregarding these conclusions, the court should assume the veracity of the remaining factual allegations and "determine whether they plausibly give rise to an entitlement to relief." *Id.* "The facts alleged in the complaint "'must be enough to raise a right to relief above the speculative level.'" *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009) (quoting *Drobnak v. Anderson Corp.*, 561 F.3d 778, 783 (8th Cir. 2009)) (internal quotation marks and citation omitted).

### III. SUBSTANTIVE CLAIMS, LAW, AND ANALYSIS

#### A. *Claim I – Negligence*

Defendant argues that Plaintiff's claim for damages for negligence is barred by the economic loss doctrine. As a general rule, the economic loss doctrine bars recovery in negligence when the plaintiff has suffered only economic loss. *Arnett Holdings, Inc. v. Kum & Go, L.C.*, 801 N.W.2d 499, 503 (Iowa 2011); *Neb. Innkeepers, Inc. v. Pittsburgh-Des Moines Corp.*, 345 N.W.2d 124, 126 (Iowa 1984) ("The well-established general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable."). That is, when the loss concerns the plaintiff's "disappointed expectations due to deterioration, internal breakdown or non-accidental cause," the remedy to the plaintiff lies in contract, and not tort, law. *Determan v. Johnson*, 613 N.W.2d 259, 262 (Iowa 2000) (quoting *Nelson v. Todd's Ltd.*, 426 N.W.2d 120, 125 (Iowa 1988)).

The purpose of the economic loss rule is to preclude parties from litigating claims and damages that have been, or ought to have been, addressed in contract. *See Arnett Holdings*, 801 N.W.2d at 503 ("When two parties have a contractual relationship, the economic loss rule prevents one party from bringing a negligence action against the other over the first party's

defeated expectations—a subject matter the parties can be presumed to have allocated between themselves in their contract."); *Van Sickle Const. Co. v. Wachovia Commercial Mortg., Inc.*, 783 N.W.2d 684, 692 (Iowa 2010) ( "The economic loss doctrine was conceived to prevent litigants with contract claims from litigating them inappropriately as tort claims . . . ."). Generally, recovery under tort theory is available "when the harm is a sudden or dangerous occurrence, frequently involving some violence or collision with external objects, resulting from a genuine hazard in the nature of the product defect." *Determan*, 613 N.W.2d at 262 (quoting *Nelson v. Todd's Ltd.*, 426 N.W.2d 120, 125 (Iowa 1988)). When the loss to the consumer plaintiff is a foreseeable result of the product's failure to work properly or as promised, recovery is only appropriate under contract theory. *See American Fire and Cas. Co. v. Ford Motor Co.*, 588, N.W.2d 437, 439 (Iowa 1999)) ("The harm to [plaintiff] fell on the contract side because it was a foreseeable result from a failure of the product to work properly.").

For the reasons outlined below, the Court finds recovery for Plaintiff's negligence claim is barred by the economic loss doctrine. The Court recognizes this is a close case. The difficulty lies in discerning the nature of Plaintiff's alleged damages and determining whether the damages are considered purely economic, so as to trigger application of the economic loss rule. Plaintiff alleges the following damage or loss caused by Defendant's negligence:

> TrimBoard delaminates, checks, splits, cracks, and chips under normal conditions of exterior use and exposure. Indeed, TrimBoard at the time of leaving LP's control, was defective because it prematurely deteriorates, rots, swells, buckles, delaminates, absorbs water, warps, and/or bulges under normal exterior conditions and natural, outdoor exposure; causes consequential water and structural damages; and promotes growth of mold, mildew, fungi, and insect infestation in the structures in which it is installed.
>
> Plaintiff's defective TrimBoard was installed on the outside of his home by subcontractors, and began to rot and led to water leakage and damage to the TrimBoard and, upon information and belief, other building components of

> Plaintiff's home, including but not limited to components installed after initial construction of Plaintiff's home and at Plaintiff's sole expense.

Am. Compl. ¶¶ 19, 24.  In sum, Plaintiff alleges that TrimBoard's failure to have caused damage both to the product itself and to some surrounding structural elements and building components.

Any recovery in tort for the damage to the TrimBoard itself caused by the failure of the product to protect against exterior moisture is barred by the operation of the economic loss rule. The damage to the TrimBoard itself allegedly caused by its own degradation or quality issues is merely the product failing to do what it was supposed to do—withstand conditions of use "where any high-quality, nonstructural trim lumber is required" and avoid "delamination, checking, splitting, cracking and chipping."  Am. Compl. ¶ 16; *see Tomka v. Hoechst Celanese Corp.*, 528 N.W.2d 103, 107 (Iowa 1995) (barring recovery under the economic loss doctrine where a product designed to cause growth in cattle simply fails to do so); *Nelson*, 426 N.W.2d at 122–23 (barring recovery under the economic loss doctrine where preservation agent simply failed to preserve meat).  Accordingly, any recovery in tort for damage to the TrimBoard itself is barred by the economic loss rule and such recovery is only permitted under contract theory of liability.

The more difficult question is whether the economic loss doctrine bars recovery of consequential damage to the surrounding structural elements and building components caused by TrimBoard's alleged failure to withstand normal conditions of exterior use.  *See, e.g.*, Restatement (Third) of Torts: Liability for Econ. Harm § 21(e) ("What constitutes harm to other property rather than harm to the product itself may be difficult to determine.").  The Iowa Supreme Court has provided the following example, which the Court finds instructive:

> If a fire alarm fails to work and a building burns down, that is considered an "economic loss" even though the building was physically harmed.  It was a foreseeable consequence from the failure of the product to work properly.  But if the fire was caused by a short circuit in the fire alarm itself, it is not an economic loss.

*American Fire*, 588 at 439 (citing *Nelson*, 426 N.W.2d at 124). The thrust of the fire alarm example is whether the damage "was a foreseeable consequence from the failure of the product to work properly." *Id.* When the product simply fails to do what it warrants and results in foreseeable damage from this failure, the economic loss doctrine bars recovery for this damage, even when the damage is to surrounding property. On the other hand, when the product affirmatively malfunctions and causes damage to surrounding property, the loss is not economic, and damages can be recovered in tort.

Applying this analogy to the instant facts, the Court concludes that TrimBoard's alleged failure and consequential damage to Plaintiff's home is more akin to the fire alarm failing to signal a fire and resulting in damage than to the fire alarm shorting out and actually causing the damage. Defendant marketed and warranted TrimBoard as fit for all trim uses, including exterior use, and as resistant to delamination, chipping, cracking, and splitting. It is the product's failure to be fit for exterior purposes—its failure to resist degradation when exposed to normal exterior moisture conditions—that resulted in the damage to Plaintiff's home. The TrimBoard did not malfunction; the water damage to Plaintiff's home is exactly the type of foreseeable consequence from the product's failure to "work properly" envisioned by the court in *American Fire*. Accordingly, the Court finds the damage to Plaintiff's home allegedly caused by Defendant's TrimBoard product to be purely economic in nature, and the economic loss doctrine bars recovery for these damages in tort.[3]

_____

[3] While not controlling, the Court notes that the District Court for the Western District of North Carolina dismissed a nearly identical cause of action as barred by the economic loss doctrine. *See Ellis v. Louisiana-Pacific Corp.*, 2011 WL 5402878 (W.D.N.C. 2011). Applying North Carolina's economic loss doctrine, which is similar to Iowa's, the district court determined that the plaintiffs' claims for negligence and unfair and deceptive trade practices, all arising out of the use of Lousiana-Pacific's allegedly defective TrimBoard product, were barred by the operation of the economic loss rule. *Id.* at *1–*2. The Fourth Circuit Court of Appeals affirmed

B.  *Claim II – Fraudulent Misrepresentation*

1.  Inapplicability of the Economic Loss Doctrine

As with the negligence claim, Defendant argues that Plaintiff's claim of fraudulent misrepresentation is barred by the operation of the economic loss doctrine.  *See* Def. Mot. at 11. The crux of Defendant's argument appears to be that "[t]here is no Iowa case that exempts fraudulent misrepresentation from the Economic Loss Doctrine."  *Id.*  However, the Court does not understand Iowa's economic loss rule to operate as a blanket ban on recovery of purely economic losses, regardless of the nature of the tort.  In other words, the Court does not agree with Defendant's assumption that the tort of fraudulent misrepresentation, but for case law exempting it, is subject to the economic loss doctrine.  Because the Iowa courts have been careful to explain when and why the economic loss doctrine applies, this Court declines the invitation to apply the rule to a new tort, absent some state court guidance or suggestion.

In fact, a careful review of Iowa's economic loss doctrine suggests the rule is not intended to apply to the tort of fraudulent misrepresentation at all.  Notably, the Iowa State Supreme Court has explicitly stated the rule does not apply to the tort of negligent misrepresentation.[4]  *Van Sickle*, 783 N.W.2d at 692 ("[N]egligent misrepresentation has always been understood as an economic tort allowing for the recovery of purely economic losses.").

---

the dismissal of the negligence and unfair and deceptive practices claims.  *See Ellis v. Louisiana-Pacific Corp.*, 699 F.3d 778, 785 (4th Cir. 2012) ("The complaint in this case claims only economic loss stemming from the allegedly defective TrimBoard.").  Notably, the plaintiffs in that case also sought recovery not only for the damage to the TrimBoard itself, but to the damage caused to their homes and property.  *See id.* at 782.  The plaintiffs in *Ellis* did not bring a fraudulent misrepresentation claim.

[4] Though the plaintiff in *Van Sickle* also brought a fraudulent misrepresentation claim, the Iowa Court of Appeals declined to address whether the doctrine applied to the tort because the defendant's claim regarding the economic loss doctrine was confined to the negligent representation claim.  *See Van Sickle Const. Co. v. Wachovia Commercial Mortg., Inc.*, 759 N.W.2d 812, *4 n.5 (Iowa Ct. App. 2008).

The exemption of negligent misrepresentation from operation of the economic loss doctrine has two important implications for Defendant's argument here. First, the Iowa Supreme Court has explicitly recognized that the rule does not bar recovery of purely economic loss in all circumstances or for all torts. *See id.* This recognition detracts from Defendant's position that the rule should apply to the tort of fraudulent misrepresentation solely because no case has specifically exempted it.

Second, *Van Sickle* reiterates that the purpose of the doctrine is "to prevent litigants with contract claims from litigating them inappropriately as tort claims." *Id.* The Iowa Supreme Court, having reviewed the purpose of the rule "and the situations in which it has been applied" determined that the doctrine should not bar recovery for purely economic losses caused by negligent misrepresentation. *Id.* Relying heavily on the plain language of the Restatement (Second) of Torts § 522, which allows for recovery of "pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation," the Iowa Supreme Court concluded that application of the doctrine to the tort of negligent misrepresentation would both contravene the plain language of § 522 and effectively eliminate recovery for the tort in Iowa. *See* Restatement (Second) of Torts § 522(1)(b); *Van Sickle*, 783 N.W.2d at 694.

Although the state has never addressed whether the doctrine operates to bar recovery for economic losses for a fraudulent misrepresentation claim, this Court believes the current formulation of and justification for Iowa's economic loss rule would not bar such a recovery. As it does for negligent misrepresentation, the Restatement (Second) of Torts clearly contemplates that a party who induces the action of another based on a fraudulent misrepresentation is liable for the relying party's pecuniary losses as a result of the misrepresentation. Restatement (Second) of Torts § 525 ("One who fraudulently makes a misrepresentation of fact . . . is subject

to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon

the misrepresentation.").  Thus, application of the doctrine to the instant tort would contravene

the plain language of the Restatement.  Given the Iowa Supreme Court's declination to

contradict the Restatement in *Van Sickle*, this Court is comfortable in its belief that it would

again refuse to do so in this context.  As such, the Court declines Defendant's invitation to

expand the application of the economic loss doctrine to the tort of fraudulent misrepresentation

and bar Plaintiff's recovery.

## 2.  Sufficiency of the Pleadings

Alternatively, Defendant argues that Plaintiff's complaint contains no specific factual

allegations in support of his claim for fraudulent misrepresentation.  *See* Def. Mot. at 10.  Rather,

Defendant argues, "Plaintiff's Amended Complaint contains only the basic elements of

fraudulent misrepresentation pled in the form of conclusory statements and are inadequate"

under the prevailing pleading requirements.  *Id.*  Defendant is correct in its assessment of the

law; to survive a motion to dismiss, Plaintiff needs to have alleged facts, and not merely legal

conclusions, in support of each element of his claim for fraudulent misrepresentation.

Accordingly, Plaintiff must allege facts sufficient to permit the Court to infer a plausible

entitlement to relief for the tort of fraudulent misrepresentation.  *See Iqbal*, 556 U.S. at 678.

That is, Plaintiff must allege facts that, when taken as true, support a plausible inference that

each of the elements of the tort is satisfied.  *See id.*  To sustain a cause of action for fraudulent

misrepresentation, Plaintiff has the burden of proving each of the following elements under Iowa

state law: "(1) representation, (2) falsity, (3) materiality, (4) scienter, (5) intent to deceive, (6)

reliance, and (7) resulting injury and damage."  *Van Sickle*, 783 at 687 (quoting *Lloyd v. Drake*

*Univ.*, 686 N.W.2d 225, 233 (Iowa 2004)).  The Court will address each of these elements in turn.

With respect to the first two elements, a false representation by the Defendant, Plaintiff alleges that Defendant's marketing, advertisement, and warranty materials stated TrimBoard was fit for ordinary use.  *See* Am. Compl. ¶ 15.  Specifically, Plaintiff alleges that Defendant represented that "'TrimBoard is recommended for use where any high-quality, nonstructional trim lumber is required;'" that consumers could "'[u]se TrimBoard for all [their] non-struction al trim lumber needs;'" and that "'TrimBoard is intended for use as nonstructural trim, fascia, corner board, soffit, rake board, and bandboard lumber.'" *Id.*  ¶ 16.  Further, Plaintiff alleges that Defendant warranted its product "'against delamination, checking, splitting, cracking and chipping of the basic structure for a period of ten years from the date of installation . . . ." *Id.* These statements, assuming for purposes of the instant motion to be actual statements contained in the TrimBoard marketing and warranty materials, are representations as to TrimBoard's purpose, use, and quality made by Defendant.

Plaintiff also sufficiently alleges that these representations were false.  Plaintiff alleges that "[c]ontrary to Defendant's representations . . . TrimBoard delaminates, checks, splits, cracks, and chips under normal conditions of exterior use and exposure."  In brief, Plaintiff makes a factual allegation that TrimBoard did not perform in the way it was so marketed, advertised, and warranted, citing specific ways in which the product failed to meet the quality and use assurances of Defendant's alleged representations, which are again presumed to be true for the purpose of this motion.  Thus, Plaintiff has alleged falsity of the representations as to proper use and quality of the product.

Third, Plaintiff alleges the representations were material.  "[A] fact is material if it substantially affects the interest of the party alleged to have been defrauded." *Dier v. Peters*, 815 N.W.2d 1, 8 (Iowa 2012).  In other words, a fact is material "if it is likely to induce a reasonable person to act." *Id.*  Here, Plaintiff pleads that he, through his builder, purchased TrimBoard for use on his home "based on representations of the suitability and cost of the product."  This allegation is sufficient for the Court to infer that, but for Defendant's representations that the product was fit for exterior trim use and was warranted "'delamination, checking, splitting, cracking and chipping,'" Plaintiff would likely not have purchased the product.  *See* Am. Compl. ¶ 16.  Thus, Plaintiff has sufficiently alleged that Defendant's representations were material.

Fourth, Plaintiff has pled facts sufficient to infer scienter and intent to deceive on Defendant's part.  "Scienter and intent to deceive are closely related elements of the same tort, and the same general analysis applies for each." *Van Sickle*, 783 N.W.2d at 688.  "Scienter and intent to deceive may be shown when the speaker has actual knowledge of the falsity of his representations or speaks in reckless disregard of whether those representations are true or false." *Garrent v. First Realty, Ltd.*, 481 N.W.2d 335, 338 (Iowa 1992).

Plaintiff's Amended Complaint contains a section detailing Defendant's purported knowledge of the TrimBoard's potential use and quality problems.  Among other things, Plaintiff alleges that the TrimBoard warranty "in effect from 1999–2001 warned that TrimBoard should not be exposed to sources of moisture common to the exterior environment," but that TrimBoard was subsequently warranted against moisture degradation, despite the fact that the product's "basic composition" remained the same.  *See* Am. Compl.  ¶¶ 30, 32.  Further, Plaintiff alleges, "ABTCO's hardboard siding, with the identical composition as TrimBoard, was the subject of numerous lawsuits alleging that the siding was susceptible to premature degradation and failure

due to excessive moisture absorption." *Id.* ¶ 39. And, "the vast majority of all warranty claims filed against LP through 2005 were concerning moisture degradation of TrimBoard." *Id.* ¶ 41. These factual allegations, when taken as true, are sufficient to permit the Court to infer that Defendant knew that there were use and quality problems with its TrimBoard product. As a result, Plaintiff has pled sufficient facts to support the elements of scienter and intent to deceive.

Fifth, Plaintiff has alleged that he justifiably relied on the false representation. Plaintiff alleges "the TrimBoard was purchased by Plaintiff's builder, Bryan Clark Homes, LLC, after obtaining authority from Plaintiff to do so based upon representations of the suitability and cost of the product." *Id.* ¶ 12. Thus, Plaintiff has alleged that he in fact relied on Defendant's representations as to the proper use and quality of TrimBoard when he purchased the product.

Finally, Plaintiff has alleged damages caused by Defendant's misrepresentations. "Plaintiff's defective TrimBoard was installed on the outside of his home . . . and began to rot and led to water leakage and damage to the TrimBoard and . . . other building components of Plaintiff's home." Am. Compl. ¶ 24. "Plaintiff was forced to spend approximately $1,700.00 of his own money to repair and replace the damage caused by the defective TrimBoard . . . ." *Id.* ¶ 26. Accordingly, Plaintiff has sufficiently alleged that TrimBoard's failure to comport with the Defendant's representations of its use and quality caused damages.

For the foregoing reasons, Plaintiff has alleged facts for each element of fraudulent misrepresentation sufficient for the Court to infer a plausible entitlement to relief. *See Iqbal*, 556 U.S. at 678. Accordingly, Plaintiff has properly and sufficiently alleged a cause of action against Defendant for fraudulent misrepresentation.

C.  *Claim III – Unfair or Deceptive Acts or Practices*

Plaintiff's third claim against Defendant is for unfair or deceptive practices in connection with Defendant's manufacture and sale of TrimBoard.  Iowa Code § 714H.3 makes unlawful any "unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact" in connection with the advertisement or sale of consumer merchandise, when done with the intent to induce consumer reliance.  Iowa Code § 714H.3 (2012).  Section 714H.5 provides a private right of action for any "consumer who suffers an ascertainable loss of money or property as the result of [a violation of § 714H.3] . . . ."  *Id.* § 714H.5.  The Private Right of Action for Consumer Frauds Act ("Private Right Act"), Iowa Code § 714H et seq., applies to causes of action "accruing on or after July 1, 2009."  *See id.* § 714H.1.

Defendant argues that Plaintiff's claim for deceptive acts or practices pursuant to the Private Right Act should be dismissed because Plaintiff fails to sufficiently allege the following:

> (1) [Plaintiff's] cause of action accrued on or after July 1, 2009, the effective date of the Act, (2) LP intended that [Plaintiff] or others rely on its allegedly unfair or deceptive acts or practices, (3) [Plaintiff] relied upon any representations made by LP, or (4) he suffered actual damages as a result of LP's allegedly unfair or deceptive acts or practices . . .

Def. Mot. at 12.  The Court will address each of these arguments in turn.

1. July 1, 2009 "Accrual" Requirement

First, Defendant argues that Plaintiff's claim is precluded by the statutory requirement that the cause of action accrue on or after July 1, 2009.  *Id.* at 12.  Defendant contends Plaintiff's cause of action "arose or accrued when the damage occurred."  *Id.* at 13.  As a result, if the damage occurred prior to July 1, 2009, Plaintiff cannot sustain a cause of action under the Private Right Act.  *Id.*  Defendant argues that because the TrimBoard was installed on Plaintiff's home at the time of the original construction in 2004, the damage occurred—and Plaintiff's cause of

action arose—before the effective statutory date. *Id.* Plaintiff responds that his claim accrued at the time he discovered his injury in April 2010. Pl. Res. at 10.

In addressing this issue, the Court first recognizes that the Iowa courts and legislature have not made clear when a cause of action "accrues" under the Private Right Act. However, the parties have identified the two rules of accrual that the courts have utilized: the traditional accrual rule and the discovery rule. Traditionally, a cause of action arises or accrues at the time the wrongful act causes damage. *See Bob McKiness Excavating & Grading, Inc. v. Morton Bldgs., Inc.*, 507 N.W.2d 405, 408 (Iowa 1993). This is the rule identified and advocated for by Defendant. However, because the traditional accrual rule can produce unfair outcomes for prospective plaintiffs, the Iowa Supreme Court developed and in certain circumstances applies the "discovery rule" of accrual. Under the discovery rule, a cause of action accrues only when an injured party is on actual or inquiry notice of the facts necessary to support a cause of action. *See Speight v. Walters Dev. Co., Ltd.*, 744 N.W.2d 108, 116 (Iowa 2008). Accordingly, under the discovery rule, if a cause of action requires a prospective plaintiff to plead damages, the cause of action accrues only upon the plaintiff's discovery of the injury or damage. *Id.* This is the rule identified and advocated for by Plaintiff.

While conscious that this is an issue of first impression, the Court holds that a cause of action under Chapter 714 accrues after the prospective plaintiff discovers his injury. The Court finds instructive Iowa's rule for the accrual of a fraud action. Under Iowa Code § 614.4, "[i]n actions for relief on the ground of fraud . . . the cause of action shall not be deemed to have accrued until the fraud . . . complained of shall have been discovered by the party aggrieved." Iowa Code § 614.4 (2012). The Iowa legislature has specifically intended the discovery rule of accrual to apply to fraud claims, and although a claim for unfair or deceptive practices is

different than fraud, the similarities in the causes of action lead the Court to conclude the discovery rule should apply here.  Both causes of action require a material misrepresentation or omission on the part of the defendant, with the intent to deceive or induce reliance, and resulting damage to the plaintiff.  Indeed, Plaintiff in this case has used many of the same factual allegations to support elements of both causes of action.  Having concluded the discovery rule applies to a claim for unfair or deceptive practices under § 714H, the Court finds Plaintiff has pled sufficient facts to demonstrate his cause of action accrued after July 1, 2009.  Plaintiff alleges he first discovered damage to the TrimBoard and surrounding property in April 2010. Am. Compl. ¶ 26.

### 2.  The Private Right Act, Intent, and Consumer Reliance

Defendant also argues Plaintiff's claim for deceptive practices should be dismissed because (1) the Private Right Act requires intent to induce on the part of Defendant and Plaintiff has not alleged facts sufficient to support scienter, and (2) the Private Right Act requires reliance by Plaintiff and he has not alleged facts sufficient to demonstrate reliance.  Def. Mot. at 14–15. In response, Plaintiff argues (1) he is not required to allege reliance on Defendant's representations to state a claim under the Private Right Act, and (2) even if he must plead reliance on Defendant's representations, he has done so.  Pl. Res. at 12–13.

With respect to Defendant's first argument, the Court agrees that the Private Right Act requires Plaintiff allege Defendant intended its acts or practices to induce consumer reliance. Section 714H.3 makes unlawful only unfair or false acts done "with the intent that others rely upon" the unfair practice or misrepresentation.  Iowa Code § 714H.3 (2012).  However, the Court finds Plaintiff has alleged facts sufficient to permit the Court to infer Defendant intended to induce reliance.  The Court engaged in a thorough discussion of Plaintiff's allegations

regarding Defendant's intent to deceive in Section II.B.2, *supra*, which the Court will not repeat here.  In sum, Plaintiff alleges facts suggesting Defendant knew of TrimBoard's moisture degradation problems and continued to market the product as fit for exterior use.  *See* Am. Compl. ¶¶ 30–41.  These factual allegations, when taken as true, are sufficient to permit the Court to infer that Defendant intended consumers like Plaintiff to rely on its representations as to the proper use and quality of the product.

The issue raised by Defendant's second argument, that Plaintiff must plead facts alleging reliance on Defendant's misrepresentation in order to sustain a cause of action under the Private Right Act, is a question that the Iowa courts have not yet addressed.  However, this Court need not answer this question here; regardless of whether the Private Right Act requires Plaintiff to allege he relied on Defendant's misrepresentations, he has done so.  Again, as outlined in Section II.B.2, *supra*, Plaintiff alleges "the TrimBoard was purchased by Plaintiff's builder, Bryan Clark Homes, LLC, after obtaining authority from Plaintiff to do so based upon representations of the suitability and cost of the product."  *Id.*  ¶ 12.  This allegation is sufficient to permit the Court to infer Plaintiff relied on Defendant's misrepresentations in electing to purchase and install TrimBoard.

### 3.  Actual Damages

Finally, Defendant argues that Plaintiff fails to allege specific facts demonstrating damages as a result of Defendant's allegedly unfair or deceptive practices.  The Court finds Plaintiff has pled sufficient facts.  As previously discussed, Plaintiff alleges that the "defective TrimBoard was installed on the outside of his home . . . and began to rot and led to water leakage and damage to the TrimBoard and . . . other building components of Plaintiff's home."  Am. Compl. ¶ 24.  Further, "Plaintiff was forced to spend approximately $1,700.00 of his own money

to repair and replace the damage caused by the defective TrimBoard . . . ."  *Id.* ¶ 26.

Accordingly, Plaintiff has sufficiently alleged damages.

## IV.  ISSUES RELATED TO CLASS ALLEGATIONS

### A.  *Class Certification Issue*

In its Motion, Defendant argues that Plaintiff's class action allegations should be

dismissed.  *See* Mot. at 18–21.  Defendant contends that the putative class does not meet the

requirements of Federal Rule of Civil Procedure 23.  Specifically, Defendant argues that

common questions of law and fact do not predominate individual issues because each member of

the putative class would need to introduce individual experiences with the product, exposure to

the marketing materials, and the nature and extent of the product's failure.  *See id.*

The Court finds these arguments premature.  At this point in the litigation, Plaintiff has

only filed an Amended Complaint and has not moved to certify the class. The Court is aware that

"the allegation of the facts necessary to bring a proposed action within the requirements of the

class-action rule must be in the complaint."  32B Am. Jur. 2d Fed. Courts § 1581.  However, the

Court is satisfied that Plaintiff has sufficiently outlined the facts necessary to bring this proposed

action within the requirements of Rule 23.  The Amended Complaint states facts pertinent to

each of the following class certification factors: numerosity, commonality, typicality, and

adequacy of the named plaintiff.  At this early stage, Plaintiff's allegations are sufficient.

Further, in addressing Defendant's argument, the Court recognizes that Plaintiff has yet

to request class certification.  As a result, Plaintiff has not had the opportunity to address—and

the Court has not had the opportunity to consider—the Rule 23 requirements with any depth.  In

requesting the Court dismiss Plaintiff's class action allegations, Defendant is, in effect, asking

the Court to deny certification before a motion for certification has been filed and before Plaintiff

has had the opportunity to fully define the putative class(es).  Although dismissal of the class

action allegations at this stage of the litigation may be within the Court's discretion, it is not

inclined to exercise this option. Defendant is free to raise these arguments if and when Plaintiff

moves for class certification, and the Court will address them at that time.  *See id.* § 1782 ("The

district court may properly consider a motion to dismiss prior to resolving the issue of class

certification. However, an analysis of class compliance with the class-action rule is not

appropriately undertaken on a motion to dismiss, but should be addressed in a motion pursuant to

the rule.").

## B.  *Declaratory Judgment Issue*

Plaintiff also seeks declaratory relief pursuant to Federal Rule of Civil Procedure 23.

Specifically, Plaintiff seeks a declaratory ruling that:

> a.    TrimBoard has defects that result in a premature failure when it is used in exterior applications;
>
> b.    Any limitation of consumer rights in Defendant's warranty is void as unconscionable;
>
> c.    Defendant must notify owners of the defects;
>
> d.    Defendant will reassess all prior warranty claims and pay the full cost of repairs and damages; and
>
> e.    Defendant will pay the cost of inspection to determine whether any Class member's TrimBoard needs replacement.

Am. Compl. ¶ 99.  Defendant contends that declaratory relief—or the certification of a

declaratory relief class—is not appropriate because the Amended Complaint seeks primarily

money damages.  Def. Mot. at 17–18.  Plaintiff argues that, as to a future or subsequent

TrimBoard purchaser class, money damages "are not the final relief."  Pl. Reply at 14–15.

Both parties have discussed the issue of declaratory relief by considering its applicability

or inapplicability to the putative class(es) in this case.  However, as the Court has previously

noted, the Court is yet to certify any class and the Plaintiff has yet to define the class(es).  At this juncture, the Court cannot make a determination regarding the appropriateness of declaratory judgment or a declaratory class and will be in a better position to evaluate the parties' arguments after it considers a motion to certify a class, should Plaintiff move for one.  Accordingly, Defendant is free to raise and brief its arguments with respect to the declaratory judgment issue in subsequent dispositive motions.

## V.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (Docket 18) is **GRANTED** in part and **DENIED** in part.  Plaintiff's negligence claim, Count I, is dismissed as barred by the economic loss doctrine.  Plaintiff's fraudulent misrepresentation and unfair or deceptive practices claims, Counts II and III, respectively, will proceed.  As discussed in Section IV, *supra*, the Court will address the issues of class certification and declaratory relief following relevant and timely motions by the parties.

IT IS SO ORDERED.

Dated this 18th day of January, 2013.

STEPHANIE M. ROSE, Judge
U.S DISTRICT COURT